UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRAVIS WILLIAM LOGAN, JR., <br><br> Plaintiff, <br><br> v. <br><br> BRIAN ENGLISH, SALVONTEZ, NAVORETTE, and HEISHMAN, <br><br> Defendants. | CAUSE NO. 3:25-CV-522-PPS-JEM |

OPINION AND ORDER

Travis William Logan, Jr., a prisoner without a lawyer, filed an amended complaint. ECF 5. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Logan alleges that, following his release from a segregation unit, he was told he would be assigned to the P housing unit. Logan told I/A Heishman that he could not go there because of an "ongoing beef accumulated from the outside world." ECF 5 at 3. I/A Heishman basically ignored his plea and placed Logan in the P housing unit anyway telling Logan that "everyone says that because it's Miami Prison." *Id.*

When Logan arrived in the P housing unit, there was a modified lockdown, where only one range was released for recreation at a time. On or about December 15, 2023, when recreation came to an end for one range, an inmate hid in the shower and another inmate jammed his door so that he could open it later. When Logan came out of his cell for recreation, these two inmates attacked Logan, and two more inmates from Logan's range joined in the attack. Logan was stabbed 13 times in the attack and suffered serious injuries resulting in a hospitalization.

While at the hospital, Sgt. Savontez told Logan that he was on the other side of the range when the signal was called and C.O. Navorette took ten seconds to open the door to the other side and an additional ten seconds to open the front door. Sgt. Savontez speculated that one or both of the officers would get in trouble because of this delay.

When Logan was released from the hospital, he was placed in the infirmary and then returned to population. The individuals that attacked Logan remain at Miami Correctional Facility. Logan is suing I/A Heishman, Sgt. Savontez, C.O. Navorette, and Warden Bryan English for monetary damages.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Hale y v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This is a high standard to meet. Indeed, simply exercising "poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008); *see also Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005) (a failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility.").

Logan told I/A Heishman that he could not be in the P housing unit because of an "ongoing beef accumulated from the outside world." ECF 5 at 3. But this kind of elliptical comment does not come close to being enough to show that I/A Heishman knew of a specific, credible, and imminent risk of serious harm by a particular prospective assailant prior to Logan being attacked. If there was more to it, or Logan was more specific in what he relayed to Heishman, he will be given an opportunity to file an amended complaint and tell me more. But for now, he may not proceed against I/A Heishman for failing to protect him from the attack that occurred on or about December 15, 2023. *See Klebanowski*, 540 F.3d at 639-40 (affirming summary judgment where, beyond expressing fear for his life, prisoner's statements to guards did not

3

identify who was threatening him or what the threats were and "[w]ithout these additional facts to rely on, there was nothing leading the officers to believe that [claimant] himself was not speculating regarding the threat he faced"); *Gevas v. McLaughlin*, 798 F.3d 475, 480-81 (7th Cir. 2015) ("Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger.").

Sgt. Savontez was delayed in responding to the signal called when Logan was attacked because C.O. Navorette was slow to open doors. These allegations suggest negligence on the part of C.O. Navorette, but they do not permit a plausible inference that either Sgt. Savontez or C.O. Navorette consciously disregarded a known risk to Logan's safety. Negligence generally states no claim upon which relief can be granted in a § 1983 action. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994) ("Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment.").

To the extent that Logan is claiming that his current placement consciously disregards a known risk to his safety, he likewise does not state a claim. Logan alleges only that he is in the same prison as the individuals who attacked him. He does not allege that they are housed in the same unit or that these individuals have any ongoing contact with him. Logan does not allege facts from which it can be plausibly inferred that he cannot be safely housed at the same institution as the inmates that attacked him. Furthermore, it is unclear who made the decision to place Logan in general population. He does not allege that any individuals have threatened him since he returned to

4

general population or provide any basis from which it could be plausibly inferred that a second attack is likely. Logan waited a year and a half before initiating this lawsuit, and he does not report any further incidents involving the individuals that attacked him during that time. He also does not allege that he has requested protective custody after the attack occurred. Thus, he has not plausibly alleged that I/A Heishman, Sgt. Savontez, or C.O. Navorette have consciously disregarded a known risk to his safety.

Finally, Logan has sued Warden Bryan English, but he does not mention him in the body of the amended complaint. There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. To be held liable, a supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). There are no factual allegations in the amended complaint from which it can be plausibly inferred that Warden English facilitated, approved, condoned, or turned a blind eye to any violation of Logan's constitutional rights. Therefore, Logan may not proceed against Warden English.

This amended complaint does not state a claim for which relief can be granted. If Logan believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number

5

on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Travis William Logan, Jr., until **March 11, 2026**, to file an amended complaint; and

(2) CAUTIONS Travis William Logan, Jr., that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

ENTERED:  February 10, 2026.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
